IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,

      Plaintiff,

v.

DUANE LEO EHMER,

      Defendant.

3:16-cr-00051-BR-10

ORDER DENYING DEFENDANT
DUANE LEO EHMER'S MOTION
(#1708) TO SUPPRESS

BROWN, Judge.

This matter comes before the Court on Defendant Duane Leo Ehmer's Motion (#1708) to Suppress Statements and Evidence.

On January 13, 2017, Ehmer filed his Motion in which he moves to suppress the alleged custodial statements that he made without warnings consistent with *Miranda v. Arizona*, 384 U.S. 436 (1966), and to suppress evidence obtained during a search of his truck and trailer that Ehmer contends was conducted in violation of the Fourth Amendment to the United States Constitution.

1 - ORDER DENYING DEFENDANT DUANE LEO EHMER'S MOTION (#1708) TO SUPPRESS

On January 20, 2017, the government filed a Response (#1754) to Ehmer's Motion in which it agrees it will not introduce Ehmer's statements in its case-in-chief, but in which the government also contends the Court should not suppress the evidence obtained as a result of the consent search of Ehmer's truck and trailer.

On February 6, 2017, the Court conducted an evidentiary hearing on Ehmer's Motion.  At the beginning of the Pretrial Conference on February 7, 2017, the Court also heard oral argument on Ehmer's Motion, after which the Court directed the parties to submit supplemental memoranda.

The government filed its Supplemental Memorandum (#1865) in Opposition to Ehmer's Motion on February 9, 2017, together with the Affidavits of Todd T. Scott (#1866) and Katherine Armstrong (#1867).  Ehmer filed his Supplemental Reply Memorandum (#1885) on February 13, 2017.

The Court finds the record is now complete and, for the reasons that follow, **DENIES** Ehmer's Motion.

2 -  ORDER DENYING DEFENDANT DUANE LEO EHMER'S MOTION (#1708) TO SUPPRESS

## FACTUAL BACKGROUND

Based on the record as a whole[1] the Court finds the following facts by a preponderance of the evidence for purposes of resolving this Motion:

Ehmer arrived at the Malheur National Wildlife Refuge (MNWR) to participate in the occupation of the MNWR no later than January 8, 2016. After several leaders of the occupation were arrested and LaVoy Finicum was fatally shot by law enforcement on January 26, 2016, Ehmer left the MNWR on the afternoon of January 27, 2016, driving his truck and towing a horse trailer that contained, among other things, his horse, Hellboy. At the time of his departure, Ehmer was emotional and fearful of being shot by law-enforcement officers.

Before Ehmer left the Refuge, law enforcement had set up two roadblocks a few miles in both directions from the entrance to

---

[1] In addition to the evidence adduced at the February 6, 2017, evidentiary hearing, the Court considers the Complaint (#1) together with the Affidavit of Katherine Armstrong attached thereto as part of the record on this Motion. Although Ehmer objects to the Court considering the government's February 9, 2017, filing of Affidavits of Todd T. Scott (#1866) and Katherine Armstrong (#1867), the Court notes the only significant addition to the record from those Affidavits is Armstrong's statement that many of the facts related to Ehmer as set out in Armstrong's Affidavit attached to the Complaint were known to law enforcement before the Complaint was finalized on January 28, 2016. That conclusion, however, is already obvious from the face of the Complaint, which relied extensively on public social-media postings that were made long before January 28, 2016. Accordingly, in its analysis the Court does not rely on the Affidavits filed by the government on February 9, 2017.

3 - ORDER DENYING DEFENDANT DUANE LEO EHMER'S MOTION (#1708) TO SUPPRESS

the MNWR.  As he drove away from the MNWR, Ehmer encountered the roadblock to the east of the MNWR at approximately 2:00 p.m.  At that roadblock law enforcement blocked the road with barricades and Bearcats (armored vehicles) to prohibit drivers on the road from passing unless law enforcement permitted them to do so.

When he encountered the roadblock, Ehmer stopped his truck and stepped out of his vehicle pursuant to commands of law-enforcement officers who pointed their firearms at Ehmer and his truck.  After Ehmer left his truck, officers searched him for weapons.  At that time officers also conducted a sweep (referred to hereinafter as the "first protective sweep") of Ehmer's truck and the horse trailer to determine whether anyone else was in them, but the officers only found Hellboy in the horse trailer.

While outside of his truck at the roadblock, Ehmer and FBI Special Agent Todd Scott, who was assigned as an FBI crisis negotiator during the occupation of the MNWR, spoke.  Their conversation was relaxed and cordial in tone.  Ehmer told Agent Scott that nine people still remained at the MNWR and that some (though not all) wanted to leave.  Agent Scott proposed that Ehmer return to the MNWR and inform those who remained that anybody who did not have a pending arrest warrant would be permitted to pass through the roadblock peacefully and to leave.  Agent Scott also told Ehmer that there was not any pending warrant for Ehmer's arrest and that Ehmer would be permitted to

4 -  ORDER DENYING DEFENDANT DUANE LEO EHMER'S MOTION (#1708) TO SUPPRESS

pass through on his return to the roadblock within an hour.
After Ehmer agreed, he returned to the MNWR with his truck and
trailer.

At approximately 3:15 p.m. Ehmer approached the east
roadblock again.  As before, Ehmer was given commands to leave
the truck, and he complied.  Officers searched him again for
weapons and conducted a second sweep of his truck and the horse
trailer (hereinafter referred to as "second protective sweep"),
which included the "tack room" of the trailer.  Again, officers
did not locate any other individuals in either the truck or the
tack room of the trailer, and they did not search those
compartments any further, except that during the second
protective sweep of the horse trailer FBI Special Agent
Christopher Hilgers unbuckled a closed saddlebag and observed a
black-powder revolver.[2]  Agent Hilgers seized the handgun and did
not search any further.

Meanwhile, Agent Scott spoke with Ehmer again.  Agent Scott
informed Ehmer that, contrary to Agent Scott's previous assurance

---

[2] At a hearing on February 15, 2017, the government
clarified that although it does not intend to introduce the
black-powder revolver as evidence at trial, it contends,
nonetheless, that the black-powder revolver was not seized
unlawfully and, therefore, should not be suppressed as Ehmer
argues in his Motion.

5 -  ORDER DENYING DEFENDANT DUANE LEO EHMER'S MOTION (#1708) TO
     SUPPRESS

to Ehmer, there was a pending warrant[3] for Ehmer's arrest, and, therefore, Ehmer would not be allowed to pass through the roadblock and to leave.  Agent Scott apologized to Ehmer for previously telling him that there was not a warrant for his arrest.  Ehmer was placed in handcuffs and searched more thoroughly than when he initially approached the checkpoint.

While Ehmer remained in handcuffs, Ehmer and Agent Scott continued to speak, and, again, they conversed in a relaxed tone. At one point another officer brought the black-powder revolver to Ehmer to inquire how to render the firearm safe.  Ehmer stated the only way he knew how to do so was to fire the weapon, but the officers did not fire the weapon and later found another way to render it safe.

At the evidentiary hearing Ehmer testified that after his second approach to the roadblock, officers also questioned him about a maroon pouch that was in his truck and as to whether he knew the contents of that pouch.  Ehmer testified his response was that he had never opened the pouch.  Agent Scott, however, testified he did not recall any questioning of Ehmer about a maroon pouch at the roadblock, was not aware of anything related to a maroon pouch at that time, and did not note anything about a

---

[3] In fact, however, this statement was not accurate because the only warrant for Ehmer's arrest was the Arrest Warrant (#3) issued the next day on January 28, 2016.

6 – ORDER DENYING DEFENDANT DUANE LEO EHMER'S MOTION (#1708) TO SUPPRESS

maroon pouch in his report.[4]

Ehmer continued to be cooperative and to express a desire to
find a peaceful resolution to the occupation of the MNWR.
Eventually Ehmer was placed in a van and driven to the Tactical
Operations Center in Burns, Oregon.[5]

After Ehmer was transported to Burns, FBI Special Agent
Elden Esperas (who had not been at the roadblock) was asked by a
superior officer to attempt to obtain Ehmer's consent to search
his truck and trailer. Agent Esperas located Ehmer in the back
of a Bearcat where Ehmer remained in handcuffs with two armed
officers in the front seat. Agent Esperas got into the back of
the Bearcat with Ehmer and introduced himself. Agent Esperas did
not have a firearm with him when he entered the Bearcat, and the
two other officers in the front seat did not display the firearms
they were carrying.

Agent Esperas requested Ehmer's consent to search his truck
and trailer as part of the FBI's investigation. Ehmer testified
Esperas told him that Agent Esperas would search the truck and
trailer regardless whether Ehmer gave his consent, but Agent

_____

[4] As explained fully below, the Court finds this factual
dispute is not material to the resolution of Ehmer's Motion, and,
therefore, the Court need not resolve it.

[5] Law-enforcement officers delivered Hellboy to a
veterinarian in Burns.

7 -  ORDER DENYING DEFENDANT DUANE LEO EHMER'S MOTION (#1708) TO
     SUPPRESS

Esperas testified he did not make any such statement.[6]

Agent Esperas read to Ehmer Form FD26, which was a printed "consent" to permit law-enforcement officers to search his truck and trailer. That Form indicates, among other things, that the individual who signs the Form has "been advised of [his] right to refuse consent," gives permission to officers to search the locations identified therein voluntarily, and authorizes agents to "take any items which they determine may be related to their investigation." *See* Gov't Resp. (#1754-1), Ex. A. Because Ehmer agreed to the "consent search," his handcuffs were undone so that he could write on Form FD26 and confirm that consent. Ehmer wrote "97 Red Chevy Taho[e]" and "white horse trailer old" in the space provided to identify the locations where Ehmer consented to be searched, and Ehmer signed and dated the Form. Agent Esperas also signed the Form as a witness. This discussion between Ehmer and Agent Esperas was conversational, and Ehmer was cooperative throughout this interaction.

The following day, on January 28, 2016, FBI Special Agent Brian Kelley and other officers searched Ehmer's truck and horse trailer pursuant to the consent that Ehmer had provided the day before. In the truck Agent Kelley located 16 shotgun shells that

---

[6] As explained fully below, the Court also finds this factual dispute is not material to the resolution of Ehmer's Motion and, therefore, the Court need not resolve it.

were spread throughout the truck, a cellular telephone, a rifle, a bag of lead shot, a Samsung tablet, and a maroon pouch that was underneath the passenger seat of the truck.  Agent Kelley was not previously aware that there might be a maroon pouch in the truck.

The maroon pouch contained cash, checks, receipts, identification cards, and credit cards that all reflected names associated with the Friends of the MNWR (a nonprofit organization that supports the MNWR and maintains an office at the MNWR headquarters) or employees who worked at the MNWR.

In the tack room of the horse trailer, Agent Kelley located a rifle that was hidden behind some hay and a welding machine as well as a belt containing ammunition.

## DISCUSSION

In his Motion Ehmer contends (1) the second protective sweep of the truck and trailer (including the discovery of the black-powder revolver) was improper; (2) Ehmer's consent to search the truck and trailer was tainted by the allegedly improper second protective sweep and was otherwise involuntary, and, therefore, that search violated the Fourth Amendment; and (3) Ehmer's statements made at the roadblock should be suppressed because he

was not given *Miranda* warnings.[7]

In addition, at oral argument on February 7, 2017, Ehmer's counsel argued the second stop of Ehmer's truck at the roadblock was itself improper. The Court notes, however, that Ehmer did not previously raise this issue in his Motion.

## I.   Justification for Second Stop at the Roadblock

For the first time at oral argument Ehmer contended the officers at the roadblock did not have justification to stop him when he returned from his trip back to the MNWR for the purpose of attempting to convince others to leave. Ehmer contends because law enforcement had stopped Ehmer previously, they no longer had sufficient justification (*i.e.*, reasonable suspicion or probable cause) to seize Ehmer at the roadblock. The Court disagrees.

Law enforcement may conduct an investigatory stop based on reasonable suspicion to support that stop. *United States v. Edwards*, 761 F.3d 977, 982 (9th Cir. 2014). An officer has reasonable suspicion when he or she has "'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Id.* (quoting *Navarette v. California*, 134

---

[7] Because the government now agrees it will not introduce any of Ehmer's statements at the roadblock in its case-in-chief at trial, the Court denies this part of Ehmer's Motion as moot with leave to renew in the event the government reconsiders its decision not to introduce Ehmer's statements in its case-in-chief or on rebuttal.

S. Ct. 1683, 1687 (2014)).  To arrest an individual, however, officers must have probable cause that the individual has engaged in criminal activity.  *See United States v. Nora*, 765 F.3d 1049, 1052-53 (9th Cir. 2014).

Although the officers' interaction with Ehmer the second time he approached the roadblock on January 27, 2016, easily could have been justified initially as an investigatory stop, it unquestionably blossomed into a full arrest by the time Ehmer was placed in handcuffs and taken into custody.  The Court, therefore, assesses whether that arrest violated the Fourth Amendment and, therefore, the Court need not examine or apply a reasonable-suspicion standard to these facts.

For the reasons that follow, the Court concludes the officers clearly had probable cause to arrest Ehmer when he approached the roadblock the second time.

At that point the officers collectively knew Ehmer was coming from the MNWR, the scene of the alleged criminal activity that was already the subject of several probable-cause arrests the previous day.  The record reflects it was well-known by January 27, 2016, that Ehmer had participated in the occupation of the MNWR since at least January 8, 2016.  For example, in the Complaint (#1) officers included a photograph posted on Ehmer's public Facebook page on January 8, 2016, from the entrance to the MNWR under which Ehmer wrote:  "[M]y post I will guard everything

11 - ORDER DENYING DEFENDANT DUANE LEO EHMER'S MOTION (#1708) TO SUPPRESS

in my post and quit my post only when properly relieved." Compl.
(#1) at ¶ 59.  Similarly, on January 9, 2016, Ehmer posted on
Facebook another photograph from the main entrance to the MNWR
headquarters complex that he captioned "guard duty."  *Id.* at ¶
60.  Also on January 9, 2016, Ehmer posted on Facebook a link to
an article on Yahoo.com with a picture of Ehmer and Hellboy,
below which Ehmer wrote:  "[Y]ep[,] its [*sic*] me . . . and my
horse[,] Hellboy," and "it was a beautiful day."  *Id.* at ¶ 61.
That same article contained a picture of Ehmer riding Hellboy
while Ehmer was wearing a sidearm on his left hip.  *Id.* at ¶ 62.
On January 10, 2016, Ehmer posted on Facebook a photograph that,
according to a Federal Wildlife Officer with the U.S. Fish and
Wildlife Service, appears to be taken from the MNWR headquarters
tower with the caption "up in the tower."  *Id.* at ¶ 63.  Finally,
on January 13, 2016, Ehmer updated his Facebook status to read:
"And people wonder why Iam [*sic*] in a guard tower in burns [*sic*]
standoff protecting our American neighbors."  *Id.* at ¶ 64.

From these facts it is clear that by January 27, 2016,
officers had probable cause to believe Ehmer was among those
involved in the alleged conspiracy to impede officers of the
United States (including the employees of the MNWR) as charged in
Count One.  Neither the fact that Ehmer had previously been to
the roadblock and law-enforcement agents had encouraged him to
return temporarily to the MNWR nor the fact that law-enforcement

12 - ORDER DENYING DEFENDANT DUANE LEO EHMER'S MOTION (#1708) TO
    SUPPRESS

agents at the roadblock misrepresented the existence of a warrant for Ehmer's arrest undermines the existence of probable cause to arrest Ehmer.

Accordingly, on this record the Court concludes the second stop of Ehmer at the roadblock was justified by probable cause to arrest him in connection with his occupation of the MNWR as ultimately charged in the Superseding Indictment (#282).

## II.   **Second Protective Sweep**

As noted, Ehmer next contends the second protective sweep of his truck and trailer violated his rights under the Fourth Amendment, and, in any event, even if the second protective sweep was justified, searching the saddlebag for the black-powder revolver went beyond the scope of a protective sweep.  The Court notes the only two pieces of evidence implicated in the second protective sweep are the black-powder revolver found in Ehmer's saddlebag and the contested testimony that law-enforcement officers located the maroon pouch during that sweep (and not during the later consent search).

"The protective sweep doctrine authorizes 'quick and limited' warrantless inspections 'of those spaces where a person may be found' when 'there are articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbor[ed] an individual posing a danger to those on

13 - ORDER DENYING DEFENDANT DUANE LEO EHMER'S MOTION (#1708) TO SUPPRESS

the arrest scene.'" *United States v. Lundin*, 817 F.3d 1151, 1161 (9th Cir. 2016)(quoting *United States v. Lemus*, 582 F.3d 958, 962 (9th Cir. 2009)).

As a general matter the Court readily concludes the second protective sweep of the truck and trailer was appropriate.  The second protective sweep took place after Ehmer returned from the MNWR where, according to Ehmer, nine other occupiers of the MNWR remained.  Especially in light of the tense situation following the arrest of several occupation leaders and the fatal shooting of Lavoy Finicum the day before, it was eminently reasonable for officers to perform a second protective sweep of the truck and trailer in order to confirm that none of the other nine occupiers who remained at the MNWR when Ehmer first encountered the roadblock were not then hiding in the truck or horse trailer for the purpose of harming the law-enforcement officers at the roadblock.

This second protective sweep, however, cannot justify the search of the saddlebag because it was not a location that could harbor "an individual posing a danger to those on the arrest scene." *See Lundin*, 817 F.3d at 1161.  The government belatedly contends this search of the saddlebag can, nevertheless, be justified under the automobile exception to the warrant requirement.  Under the automobile exception "officers may search a vehicle and any containers found therein without a warrant, so

14 - ORDER DENYING DEFENDANT DUANE LEO EHMER'S MOTION (#1708) TO SUPPRESS

long as they have probable cause." *United States v. Camou*, 773
F.3d 932, 941 (9th Cir. 2014).  "An officer will have probable
cause to search if 'there is a fair probability that contraband
or evidence of a crime will be found in a particular place, based
on the totality of circumstances.'"  *United States v. Cervantes*,
703 F.3d 1135, 1139 (9th Cir. 2012)(quoting *Dawson v. City of
Seattle*, 435 F.3d 1054, 1062 (9th Cir. 2006)).

Here law-enforcement officers collectively had probable
cause to believe evidence of a crime would be found in Ehmer's
truck and trailer in light of the fact that Ehmer was traveling
directly from the alleged crime scene after spending multiple
days occupying the MNWR.  Moreover, law-enforcement officers
collectively had probable cause to believe the saddlebag, in
particular, might contain evidence of a crime.  In light of the
fact that Ehmer had been photographed riding Hellboy during the
occupation of the MNWR and the fact that the saddlebag was
located in Ehmer's horse trailer along with Hellboy, officers
could reasonably infer that the saddlebag belonged to Ehmer and
that he had brought it with him to the MNWR.  In addition to the
saddlebag being in Ehmer's possession during the extended period
that he occupied the MNWR (a fact that by itself gives rise to a
fair probability that evidence of the alleged crime could be
found therein because the totality of the effects that Ehmer took
with him to the MNWR are relevant to prove his intent in

15 - ORDER DENYING DEFENDANT DUANE LEO EHMER'S MOTION (#1708) TO
      SUPPRESS

occupying the MNWR and the extent of his participation in that occupation), Ehmer had been photographed at the MNWR riding Hellboy while carrying a firearm. *See* Compl. (#1) at ¶¶ 34-37. It follows that the firearms that he possessed and carried at the MNWR, in particular, are potentially compelling evidence of Ehmer's alleged intent to impede officers of the United States by force, intimidation, or threat. Moreover, given the preexisting connection between Hellboy and firearms that Ehmer carried, there was probable cause to believe that a firearm might be found within the saddlebag. Accordingly, the Court concludes the officers' search of the saddlebag was authorized under the automobile exception, and, therefore, its search and the seizure of the black-powder revolver did not unlawfully "taint" the interactions with Ehmer.

As noted, Ehmer also testified law-enforcement agents asked him about the maroon pouch during his arrest at the roadblock.[8] The Court concludes it need not determine whether Ehmer's testimony in this respect is credible because even if officers located the maroon pouch during the second stop at the roadblock, the search of the truck, as noted, was justified under the automobile exception. Accordingly, any seizure of the maroon pouch would have been permissible.

---

[8] The Court notes Ehmer did not testify the officers opened the maroon pouch at that time.

In addition, even if officers had opened the maroon pouch at the roadblock, Ehmer has failed to establish that he had any reasonable expectation of privacy in the pouch. The Ninth Circuit has held the defendant carries the burden of proof to demonstrate that he had a reasonable expectation of privacy in an item that was searched. *United States v. Caymen*, 404 F.3d 1196, 1199 (9th Cir. 2005). As the Ninth Circuit summarized in *Caymen*:

> The "capacity to claim the protection of the Fourth Amendment depends not upon a property right in the invaded place," but rather "whether the individual by his conduct has exhibited an actual (subjective) expectation of privacy," and further, "whether the individual's subjective expectation of privacy is one that society is prepared to accept as reasonable."

*Id.* at 1199-1200 (quoting *Rakas v. United States*, 429 U.S. 128, 143 (1978), and *Smith v. Maryland*, 442 U.S. 735, 740 (1979)).

The record relating to the maroon pouch is sparse at best and can be summarized as follows: (1) it was located under the passenger seat in Ehmer's truck regardless whether its discovery occurred at the time that Ehmer was arrested (as he testified) or during the consent search on January 28, 2016 (as Agents Scott and Kelley testified); (2) Ehmer testified at the evidentiary hearing that he told law-enforcement officers at the roadblock that he did not open the maroon pouch when allegedly asked what was inside of the pouch; and (3) the pouch, in fact, contained cash, checks, credit cards, and identification cards that were associated with the Friends of the MNWR and/or MNWR employees.

17 - ORDER DENYING DEFENDANT DUANE LEO EHMER'S MOTION (#1708) TO SUPPRESS

On this record, therefore, the Court concludes Ehmer has
failed to carry his burden to show that he had any reasonable
expectation of privacy in the maroon pouch because he has not
provided any evidence from which the Court could conclude he had
a subjective expectation of privacy in the pouch.  Although the
fact that the pouch was located in Ehmer's truck may provide some
support for an inference that the pouch belonged to Ehmer, that
inference is overcome by Ehmer's own testimony that he did not
open the maroon pouch, and, therefore, that he did not know what
was inside the pouch.  Moreover, in light of the fact that the
property found inside of the maroon pouch was the property of the
Friends of the MNWR, MNWR employees, or the United States
government (and not Ehmer's property), the Court can only
conclude, in the absence of any evidence to the contrary, that
the maroon pouch itself also belonged to the Friends of the MNWR
or to the government and not to Ehmer.  Because an individual
does not possess a reasonable expectation of privacy in property
that was stolen or that he was not otherwise authorized to
possess (see Caymen, 404 F.3d at 1200-01), Ehmer did not have any
reasonable expectation of privacy in the maroon pouch.
Accordingly, even if the maroon pouch was first discovered at the
roadblock, Ehmer, nevertheless, does not have standing under the
Fourth Amendment to challenge its search and seizure.

For these reasons, therefore, the Court concludes the second

18 - ORDER DENYING DEFENDANT DUANE LEO EHMER'S MOTION (#1708) TO
     SUPPRESS

protective sweep, including the search of the saddlebag and the alleged discovery of the maroon pouch, were proper under the automobile exception.

## III. **January 28, 2016, Search**

Ehmer next contends the written consent to search that he gave on January 27, 2016, for the full search of the truck and trailer that Agent Kelley conducted on January 28, 2016, was tainted by the earlier alleged unlawful activity and, in any event, involuntary.

Again, the Court notes the January 28, 2016, search was not tainted because it was justified under the automobile exception, and, therefore, Ehmer's consent was not necessary to search the truck and trailer.  Under the automobile exception to the warrant requirement, law enforcement can search a vehicle and any containers found therein if the officers have probable cause to believe evidence of a crime can be found in the automobile and the containers.  That exception applies even when the vehicle has been impounded and the driver has been arrested.  *See United States v. Johns*, 469 U.S. 478, 486-87 (1985)(holding the automobile exception justified a warrantless search of boxes that took place three days after the boxes were seized from an automobile).  *See also Camou*, 773 F.3d at 941-42 (discussing *Johns* and noting the automobile exception permits reasonable delays between the seizure of an automobile and containers and a

19 – ORDER DENYING DEFENDANT DUANE LEO EHMER'S MOTION (#1708) TO SUPPRESS

search thereof).

As also noted, law enforcement collectively had probable cause to believe that evidence of the Count One conspiracy could be found in both Ehmer's truck and his horse trailer when they arrived at the roadblock on January 27. There is not any evidence in the record from which the Court could conclude probable cause ceased to exist at some point between the seizure of the vehicle and trailer at the roadblock and the time that the search ultimately took place the following day. The one-day delay between the seizure and the search was, in any event, reasonable in light of the ongoing occupation of the MNWR and the resulting demands placed on law enforcement. Accordingly, even if Ehmer's consent was somehow involuntary, the January 28, 2016, search was lawful under the automobile exception to the warrant requirement.

Moreover, the Court also concludes the government established by a preponderance of the evidence that Ehmer's consent to search the truck and trailer was voluntary. "Whether consent to search was voluntarily given is 'to be determined from the totality of all the circumstances.'" *United States v. Patayan Soriano*, 361 F.3d 494, 501 (9th Cir. 2003)(quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973)). The government bears the burden of proving consent was freely and voluntarily given. *Patayan Soriano*, 361 F.3d at 501.

20 - ORDER DENYING DEFENDANT DUANE LEO EHMER'S MOTION (#1708) TO SUPPRESS

The Court considers five factors when determining whether consent to a search was voluntary:

> (1) whether defendant was in custody; (2) whether the arresting officers had their guns drawn; (3) whether *Miranda* warnings were given; (4) whether the defendant was notified that [he] had a right not to consent; and (5) whether the defendant had been told a search warrant could be obtained.

*Id.* at 502 (9th Cir. 2004). *See also Liberal v. Estrada*, 632 F.3d 1064, 1082 (9th Cir. 2011). "No one factor is determinative to the equation," but the court is more likely to find the consent was voluntary if "'at least several of the factors'" support such a finding. *Patayan Soriano*, 361 F.3d at 502 (quoting *United States v. Chan-Jimenez*, 125 F.3d 1324, 1327 n.3 (9th Cir. 1997)). The factors, however, are "only guideposts, not a mechanized formula to resolve the voluntariness inquiry." *Id.*

It is undisputed that at the time he gave consent to search the truck and trailer, Ehmer was in custody and he was not given *Miranda* warnings. Those factors, therefore, weigh against a finding that his consent was voluntary.

It is also undisputed, however, that Ehmer was told (both orally and in plain English on the consent form) that he had a right to decline to give consent. A defendant's knowledge that he is free to decline to consent to the search is "especially significant" when determining whether his consent was voluntary.

*United States v. Mendenhall*, 446 U.S. 544, 558 (1980).  *See also*
*Feaster v. Las Vegas Metro. Police Dep't*, 451 F. App'x 663, 664
(9th Cir. 2011).  Accordingly, the Court concludes Ehmer clearly
understood he had a right to refuse consent to the search.

Moreover, it is also undisputed that officers did not have
their weapons drawn and that the conversation between Ehmer and
Agent Esperas was relaxed.  Thus, although Ehmer was in custody
at the time that he provided consent and had not been advised of
his *Miranda* rights, the environment in which he ultimately gave
his consent was not unduly coercive.  These factors readily
outweigh the above factors that might suggest his consent may
have been involuntary.

Finally, the Court notes the primary factual dispute between
the parties relates to whether Agent Esperas told Ehmer that
officers would search the truck and trailer regardless whether
Ehmer consented.  Although this dispute is relevant to the fifth
factor, "when probable cause to justify a warrant exists, the
weight of the fifth factor is significantly diminished."  *Patayan*
*Soriano*, 361 F.3d at 504-05.  As noted, probable cause to justify
a search warrant or a warrantless search of the truck and trailer
under the automobile exception existed at the time that Ehmer
gave his consent.  The Court, therefore, need not resolve this
factual dispute because even if Agent Esperas told Ehmer that the
government would search the truck and trailer regardless of

22 - ORDER DENYING DEFENDANT DUANE LEO EHMER'S MOTION (#1708) TO
     SUPPRESS

Ehmer's consent, that statement would not overcome the strength of the factors that support a finding that the consent was freely and voluntarily given.[9]

Applying these factors to the totality of the circumstances, the Court concludes the government has carried its burden and proved by a preponderance of the evidence that Ehmer freely and voluntarily gave consent to search the truck and the trailer.

<u>**CONCLUSION**</u>

For these reasons, the Court **DENIES** Defendant Duane Leo Ehmer's Motion (#1708) to Suppress Statements and Evidence.

IT IS SO ORDERED.

DATED this 16th day of February, 2017.

_____
ANNA J. BROWN
United States District Judge

---

[9] In any event, as to this factual dispute the Court finds implausible the notion that the officer's alleged statement persuaded Ehmer to consent.  To the contrary, the officer's alleged statement, if made, would be more likely to persuade an individual *not* to consent because the waiver of a known right was not necessary.

23 - ORDER DENYING DEFENDANT DUANE LEO EHMER'S MOTION (#1708) TO
     SUPPRESS